UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARICE BURTON, JR.,            )
                              )
            Plaintiff,        )   Case No. 1:06-cv-329
                              )
v.                            )   Honorable Wendell A. Miles
                              )
JOHN RUBITSCHUN et al.,       )
                              )
            Defendants.       )
_____)

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.   Factual allegations

Plaintiff Arice Burton is currently incarcerated in the Pugsley Correctional Facility. Plaintiff is imprisoned for the following convictions: second-degree murder, possession of a firearm during the commission of a felony, and two counts of felonious assault. Plaintiff's complaint, however, concerns the denial of his parole. He sues John Rubitschun, Chairman of the Michigan Parole Board, and Charles Braddock, a member of the Michigan Parole Board, in their individual capacities.

Prior to his parole interview, Plaintiff received an Michigan Department of Corrections (MDOC) Parole Guidelines Scoresheet with a score of +9, which equates to a "high probability of parole." Nevertheless, the parole board voted to continue Plaintiff's incarceration for twelve months on November 8, 2004. To deny parole to a prisoner who has a "high probability of parole," the parole board must give substantial and compelling reasons to depart from the parole guidelines. MICH. COMP. LAWS § 791.233e(6).[1] In accordance with MICH. COMP. LAWS § 791.233e(6), the parole board provided that "[d]espite the completion of [Assaultive Offender's Program] designed to address his assaultiveness, the Board lacks assurance that Plaintiff has

---

[1] Plaintiff inadvertently refers to the statute as MICH. COMP. LAWS § 791.233(e)(b) in his complaint. The relevant section of the Michigan statute for Plaintiff's argument is § 791.233e(6). MICH. COMP. LAWS § 791.233e(6) states:

> The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

maximized his insight, fully accepted responsibility or attained a meaningful degree of empathy that would signify a reduce[d] risk to [the] public." Pl.'s Compl. at 3.

On February 16, 2005, Plaintiff received a second MDOC Parole Guidelines Scoresheet with a score of +9 for a "high probability of parole." On April 27, 2005, a parole board member allegedly voted in favor of Plaintiff's parole. On May 5, 2005, however, the parole board ultimately continued Plaintiff's incarceration for twenty-four months. In support of its decision, the parole board stated "[d]espite [Plaintiff's] completion of therapy, the Parole Board is not assured he has gained adequate insight into the henious [sic] nature of his offenses. [Plaintiff] is deemed an unwarranted risk to public safety." Pl.'s Compl. at 3-4. The parole board recommended that Plaintiff "identify and develop community resources to address special needs identified through group therapy" to facilitate his release on parole. *Id.* at 4. Plaintiff argues that he previously notified the parole board that the Wayne County Catholic Social Services agreed to accept him in its Anger Management Workshop upon his release. Since Plaintiff already completed the MDOC Assaultive Offender Program, he apparently is no longer eligible to participate in the Program for a second time.

Plaintiff argues that Defendants' departure from the parole guidelines in 2004 and 2005 to deny his parole when he received a "high probability of parole" violated his rights under the Due Process Clause and MICH. COMP. LAWS § 791.233e(6).

For relief, Plaintiff requests declaratory and injunctive relief, and a new parole hearing.

II.     Section 1983

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). The Supreme Court has held that a state prisoner cannot make a cognizable claim under § 1983 for an alleged unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997). However, in *Wilkinson v. Dotson*, 125 S. Ct. 1242, 1247 (2005), the Supreme Court clarified that §1983 remains available to state prisoners for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. Plaintiff does not directly seek release from prison; rather, he requests a new parole hearing, and declaratory and injunctive relief preventing Defendants from violating his federal rights in future parole proceedings. Pl.'s Compl. at 9. As a consequence, under *Wilkinson*, success in this action would not necessarily demonstrate the invalidity of Plaintiff's continued confinement, so his action does not appear to be *Heck*-barred. Assuming that Plaintiff's action is cognizable under § 1983, it fails to state a claim as set forth herein.

III.     Failure to state a claim[2]

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     Due Process Clause

Plaintiff argues that Defendants' departure from the parole guidelines in 2004 and 2005 to deny his parole when he received a "high probability of parole" violated his rights under the Due Process Clause. Plaintiff, however, has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole

---

[2]Although a prisoner may not grieve a decision by the parole board to grant or deny parole, a prisoner may grieve a failure of the parole board to follow the parole process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ F(2) (effective Dec. 19, 2003) (decisions by the parole board to grant, deny, rescind, amend or revoke parole are non-grievable issues), Policy Directive 06.05.100, ¶ H (effective July 1, 2000) (prisoners can challenge the calculation of the guidelines score, including accuracy of information used to calculate the score), Policy Directive 06.05.106, ¶ U (effective Feb. 10, 1986) (prisoners may grieve the failure to follow the parole process). The Court, however, need not first require exhaustion of available administrative remedies when the claim may be dismissed because it is, "on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c)(2); *Brown v. Toombs*, 139 F.3d 1102, 1103 (6th Cir. 1998). Because Plaintiff's complaint fails to state a claim upon which relief can be granted, the Court will dismiss his action without first requiring Plaintiff to exhaust any available administrative remedies.

system by itself does not give rise to a constitutionally-protected liberty interest in parole release. *Id.*; *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole.  Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole.  *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar. 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999).  Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole.  *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991);

*Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).  Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).  Accordingly, Plaintiff has no liberty interest at stake.  Because Plaintiff has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.  *See Sweeton*, 27 F.3d at 1164-65.

Furthermore, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole."  As stated by the Supreme Court, a state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole.  *Greenholtz*, 442 U.S. at 7-8.  At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board.  *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed "a large number of factors to be taken into account by the board.")  Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate.  The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due process.  *Id.* at 1165.  This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the parole board.  In an unpublished decision, the Sixth Circuit has found that where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole.  *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dallman*, No. 90-3459, 1991

WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in the hands of the board, there is no liberty interest).  In *Carnes v. Engler*, No. 03-1212, 2003 WL 22177118 (6th Cir. Sept. 19, 2003), the plaintiff argued that the Michigan parole scheme created a liberty interest in parole because it places severe restrictions on the board's discretion to grant or deny parole, and because it requires the board to provide "substantial and compelling reasons" for departing from the parole guidelines.  *See* MICH. COMP. LAWS § 791.233e(6). The Sixth Circuit rejected the plaintiff's arguments, holding that "the ultimate authority to grant parole still lies with the discretion of the parole board."  2003 WL 22177118, at *1.  Because Plaintiff has no liberty interest at stake, his due process claim must fail.

        B.      State Law

Plaintiff alleges that Defendants violated MICH. COMP. LAWS § 791.233e(6) by failing to provide "objective and verifiable reasons" to depart from the parole guidelines.  Pl.'s Compl. at 7-8.  Section 1983, however, does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166.  To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances.  *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993);  *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *1-2 (6th Cir. June 18, 1998).  This claim will be dismissed without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action fails to state a claim and will therefore be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455 appellate filing fee in one lump sum.

This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  July 28, 2006                     /s/ Wendell A. Miles
                                                                Wendell A. Miles
                                                                Senior U.S. District Judge